UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| GLOBAL MUSIC RIGHTS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>-against-<br><br>VERMONT BROADCAST ASSOCIATES, INC., a Vermont corporation; and BRUCE JAMES, an individual,<br><br>Defendants. | Civil Action No: 2:24-cv-00066 |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff Global Music Rights, LLC ("GMR"), by and through its attorneys, states the following as its Complaint against Vermont Broadcast Associates, Inc. and Bruce James ("Defendants"):

**PRELIMINARY STATEMENT**

1. Musical compositions are intellectual property and, in the case of "hit" compositions, highly valuable intellectual property. United States law grants to copyright owners certain exclusive rights, including the right to authorize others to perform publicly their music. *See* 17 U.S.C. § 106.

2. Terrestrial radio companies perform compositions to drive listenership which, in turn, drives advertising and other forms of revenue. Before performing publicly copyrighted compositions, however, the terrestrial radio company must obtain authorization to do so.

3. When a terrestrial radio company performs a musical composition without obtaining the necessary advanced permission, it acts in violation of federal copyright laws. When that

terrestrial radio company had been offered *ten* separate opportunities to license the public performances, *declined* all of those opportunities, paid *nothing* for performances, and *still* performed *66* compositions *more than 1,600 times,* then it acted *willfully* in violation of federal copyright laws.  Defendants are willful infringers.

4. Performance Rights Organizations, or "PROs" as they are known in the music industry, represent songwriters and publishers in licensing the public performances of copyrighted music.  For decades, there were only three PROs—ASCAP, BMI, and SESAC—which collectively represented (and continue to represent) more than tens of thousands of composers and 20 million compositions that are available for public performance.

5. Founded in 2013, GMR is the fourth PRO overall— and the first new PRO in the United States in more than 70 years.  GMR represents an elite roster of just over 150 songwriters (and their associated publishers), including Bruce Springsteen, Bruno Mars, Drake, Pharrell Williams, John Lennon, and the Eagles, in licensing the public performances of their copyrighted music (the "GMR Compositions").

6. Vermont Broadcast Associates, Inc. is a sophisticated media company that operates numerous radio stations.  Bruce James is the owner of Vermont Broadcast Associates, Inc.  Some of Defendants' radio stations perform GMR Compositions and, since at least 2017, these stations have performed GMR Compositions without obtaining a license in violation of copyright laws.

7. Defendants' infringements were neither incidental nor accidental.  Defendants' radio stations performed 66 GMR Compositions more than 1,600 times.

8. Defendants' infringements were willful.  GMR submitted to Defendants in January 2017, August 2017, February 2018, August 2018, February 2019, August 2019, March 2020, March 2021, December 2021, and January 2022 ten separate written license offers

pursuant to which radio stations owned by Defendants would be authorized to perform publicly the GMR Compositions.  Defendants did not accept any of them, and Defendants did not pay GMR any license fees from January 2017 through the filing of this complaint.  Defendants made the strategic decision not to pay GMR for these uses and hoped to get away with it.

9. By way of this Complaint, GMR seeks to hold Defendants accountable for their willful infringements of the GMR Compositions.

## JURISDICTION AND VENUE

10. This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq*. (the "Copyright Act").  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

11. This Court has personal jurisdiction over Defendants because, among other things, Defendants operate radio stations in the State of Vermont and in this judicial district, Defendants regularly conduct or have conducted business in the State of Vermont and in this judicial district, Defendants have caused injury to GMR within the State of Vermont and in this judicial district, Vermont Broadcast Associates, Inc. is headquartered and incorporated in the State of Vermont, and Bruce James' principal place of business is located in the State of Vermont.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(a), and 28 U.S.C. § 1391(b).

## PARTIES

13. Plaintiff GMR is a Delaware limited liability company with its principal place of business at 1100 Glendon Avenue, Suite 2000, Los Angeles, California 90024.

14. GMR is a performance rights organization, or PRO. As a PRO, GMR represents owners of copyrights in musical works in licensing the public performance of those works.

15. GMR represents an elite roster of just over 150 premium songwriters and their associated publishers. These songwriters and publishers have granted GMR the right to license to others the GMR Compositions. GMR has the right to license their works, collect applicable license fees for performances of those works, remit payments, and enforce their intellectual property rights in court if necessary.

16. Defendant Vermont Broadcast Associates, Inc. is a Vermont corporation with its principal place of business at 39 Church Street, Lyndonville, VT, 05851.

17. Defendant Bruce James is the owner of Vermont Broadcast Associates, Inc. and his principal place of business is 39 Church Street, Lyndonville, VT, 05851.

18. Vermont Broadcast Associates, Inc. is a media company and radio broadcaster that during the relevant period in this case owned radio stations in Vermont, including but not limited to WMOO-FM and WGMT-FM.

## THE COPYRIGHTED WORKS

19. Beginning as late as January 1, 2017 (and possibly earlier) and continuing through the present, radio stations owned by Defendants have publicly performed GMR Compositions without obtaining a license and without paying for their performances. Exhibit A identifies GMR Compositions that have been performed just since August 2022 and are currently the

subject of this lawsuit.  Radio stations owned by Defendants performed publicly these GMR Compositions *more than 1,600 times*.[1]

20.     Each of the GMR compositions listed on Exhibit A was registered with the United States Copyright Office and complied in all respects with the requirements of the Copyright Act. Certificates of Registration have been granted for each of those works.

21.     The owners of each work listed on Exhibit A each possess public performance rights in the GMR Compositions.  Those owners have granted to GMR the exclusive third-party right to license to others the right to perform publicly the GMR Compositions.

22.     For each infringement listed on Exhibit A, Defendants and/or radio stations owned by Defendants did not have a valid license, authorization, permission, or consent to perform publicly the GMR Compositions.

23.     Also, radio stations owned by Defendants may have performed publicly without authorization and, therefore, intentionally infringed other GMR Compositions that are not identified on Exhibit A and for which they may be liable under the Copyright Act.

24.     Defendants' infringement of each GMR Composition is governed by the same legal rules and involves similar facts and, thus, litigating them together promotes the administration of justice and avoids a multiplicity of separate, similar actions against Defendants.

**DEFENDANTS' INTENTIONAL INFRINGEMENT**

25.     Defendants' radio stations have infringed the GMR Compositions over 1,600 times.  Defendants had the legal obligation to ensure that its radio stations obtained authorization to perform the GMR Compositions before the stations publicly performed the GMR

---

[1] GMR reserves the right to amend its complaint based on further investigation and/or information learned in discovery.

Compositions. Defendants did not obtain the necessary authorization, making the calculated decision instead to infringe freely and hope GMR would either not find out or not enforce its rights.

26. Defendants are aware and knew that the public performance of copyrighted musical compositions on their radio stations without a valid license would constitute copyright infringement. Defendants have operated radio stations in the United States for decades and GMR has repeatedly advised Defendants that they need a valid license to perform GMR Compositions.

27. As a media company and broadcaster with over a decade of experience, Defendants are well-versed in matters of licensing and copyright infringement and understand fully their obligation to obtain a performance rights license before performing copyrighted works on their radio stations.

28. Defendants are aware and know that the public performance of the GMR Compositions required prior authorization and that publicly performing the GMR Compositions without prior authorization would constitute copyright infringement. GMR's entrance into the PRO market in 2013 was headline news in the music industry and was noted in multiple national publications. *See, e.g.*, Ben Sisario, *Irving Azoff to Start New Entertainment Business*, NEW YORK TIMES, Sept. 4, 2013.[2] In the years following GMR's founding, prominent music industry publications have regularly published articles tracking the movement of artists from other PROs to GMR. *See, e.g.*, Ed Christman, *Pharrell to Leave ASCAP for Irving and*

---

[2] Available at https://www.nytimes.com/2013/09/05/business/media/irving-azoff-starts-new-entertainment-business.html (last accessed January 16, 2024).

*Grimmet's Global Music Rights*, BILLBOARD MAGAZINE, Jul. 25, 2014;[3] Ed Christman, *Prince Estate Taps Azoff's Global Music Rights to Oversee Artist's Entire Catalog*, BILLBOARD MAGAZINE, Jan. 11, 2017.[4]  Another PRO, BMI, posted a notice on its website notifying licensees that a number of songwriters previously affiliated with BMI had joined GMR and that a license from BMI would no longer permit the public performance of those songwriters' compositions.

29. Defendants made a willful, calculated, and strategic decision not to obtain prior authorization to perform publicly the GMR Compositions and hope that GMR would not find out or would choose not to enforce its rights.  On multiple occasions between January 2017 and the present, GMR offered Defendants the opportunity to license GMR Compositions for public performance and warned Defendants that their stations were not authorized to perform publicly the GMR Compositions unless Defendants secured and paid for a license.

30. The first written proposal from GMR to Defendants was in January 2017.  It stated: "GMR has agreed to offer a 9-month . . . license to [Defendants] . . . If you choose to enter into this . . . license, stations owned by [Defendants]. . . may publicly perform GMR's repertory . . . ."  Defendants did not submit a signed license, and did not pay GMR any money.

31. In March 2017, GMR sent Defendants another communication, stating: "We write to follow up on our attempts to contact you concerning your radio station group and GMR compositions. GMR offered [a] . . . license to radio station groups seeking to use GMR compositions . . . To date, we have not received a signed agreement or payment from you.

---

[3] Available at https://www.billboard.com/articles/business/6188942/pharrell-to-leave-ascap-for-irving-and-grimmets-global-music-rights (last accessed January 16, 2024).

[4] Available at https://www.billboard.com/articles/business/7654288/prince-global-music-rights-gmr-performance-licensing-deal (last accessed January 16, 2024).

Accordingly, you are not authorized to perform GMR compositions." Defendants did not submit a signed license, and did not pay GMR any money.

32. In August 2017, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 6-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

33. In February 2018, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 6-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

34. In August 2018, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 6-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

35. In February 2019, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 6-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

36. In August 2019, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 6-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

37. In March 2020, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 12-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

38. In March 2021, GMR sent Defendants another communication, stating: "GMR is . . . offering [a] 9-month license . . . If you choose to enter into this . . . license, stations owned by [Defendants] may publicly perform GMR's repertory." Defendants did not submit a signed license, and did not pay GMR any money.

39. In December 2021, GMR sent Defendants another communication offering Defendants a 3-month license and informing Defendants that "failure to secure this [license] will result in your company being unlicensed and unauthorized to perform the music represented by GMR." Defendants did not submit a signed license, and did not pay GMR any money.

40. In January 2022, GMR sent Defendants another communication offering Defendants a long-term license that would "give [Defendants' stations] the opportunity to perform GMR works for up to the next 7 years with rate certainty." Defendants did not submit a signed license, and did not pay GMR any money.

41. Despite not securing any of the above offered licenses, and despite never paying GMR any license fees, stations owned by Defendants performed publicly 66 GMR Compositions, more than 1,600 times, at a minimum.

42. The stations that performed the GMR Compositions without authorization profited handsomely from the use of the intellectual property. By performing the high quality works in the GMR repertory, Defendants' stations were able to attract more listeners, which in turn allowed them to obtain additional advertising revenues.

## CLAIM FOR RELIEF

## COUNT I

### (Direct Copyright Infringement – Public Performance)

43. GMR incorporates herein by this reference each and every allegation contained in paragraphs 1 through 42 above.

44. The copyrights to the GMR Compositions have been registered with the United States Copyright Office.

45. GMR has the exclusive third-party right to authorize others to publicly perform the GMR Compositions.

46. Defendants have infringed the copyright interests in the GMR Compositions by performing the GMR Compositions on their radio stations without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

47. Defendants' acts of infringement are willful, intentional, purposeful, and in disregard of and indifferent to the rights of GMR and those of the songwriters it represents.

48. As a direct and proximate result of Defendants' willful and infringing uses of the GMR Compositions, GMR is entitled to maximum statutory damages of $150,000 for each copyright infringed, damages and to Defendants' profits in amounts to be proven at trial, and/or such other amount as may be proper under 17 U.S.C. § 504(c).

49. GMR is further entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

50. As a result of Defendants' acts and conduct, GMR has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. GMR is informed and believes, and on that basis avers, that unless enjoined by this

Court, Defendants will continue to infringe GMR's rights in the GMR Compositions. GMR is entitled to permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## JURY DEMAND

51. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, GMR requests that the Court enter judgment in its favor and against Defendants as follows:

a) That Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501);

b) Require Defendants to pay maximum statutory damages in an amount not less than $150,000 per GMR Composition infringed as permitted in 17 U.S.C. § 504(c), or pursuant to 17 U.S.C. § 504(b), GMR's actual damages plus Defendants' profits from infringement, in an amount to be proven at trial, and such further damages as permitted by applicable law;

c) That Defendants, their agents, servants, employees, and all persons acting under their permission and authority, be preliminarily and permanently enjoined and restrained from infringing, in any manner, the GMR Compositions, pursuant to 17 U.S.C. § 502;

d) That Defendants be ordered to pay costs, including reasonable attorney fees, pursuant to 17 U.S.C. § 505; and

e) Such other and further relief as the Court may deem just and proper.

Case 2:24-cv-00066-cr   Document 1   Filed 01/18/24   Page 12 of 12

- 12 -

Dated: January 18, 2024
Burlington, Vermont

Respectfully submitted,

By: __/s/ *Andrew D. Manitsky*_____

Andrew D. Manitsky
Lynn Lynn Blackman & Manitsky, P.C.
76 St. Paul Street, Suite 400,
Burlington, Vermont 05401
(802) 860-1500

&

Daniel M. Petrocelli
(*pro hac vice* forthcoming)
dpetrocelli@omm.com
David Marroso
(*pro hac vice* forthcoming)
dmarroso@omm.com
Stephen J. McIntyre
(*pro hac vice* forthcoming)
smcintyre@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067
Telephone:  (310) 553-6700

*Attorneys for Global Music Rights, LLC*